## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |  |
|---|---|---|
| **ROBERT JORDAN** | ) | Case No.:  8:17-cv-00743 |
| 12715 Glynis Road | ) | |
| Clinton, MD 20735 | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| **MEDSTAR SOUTHERN MARYLAND HOSPITAL** | ) | |
| **CENTER, INC.** | ) | |
| 7503 Surratts Road | ) | |
| Clinton, MD 20735 | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT

Robert Jordan ("Plaintiff") brings the instant action against MedStar Southern Maryland

Hospital Center, Inc. ("MedStar" or "Defendant") and states as follows:

## VENUE AND JURISDICTION

1.      This Court has subject matter jurisdiction over this action pursuant to the Maryland Wage

Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*; the Equal

Pay Act of 1963, as amended, 29 U.S.C. § 206(d) *et seq.*; the Lily Ledbetter Fair Pay Act

of 2009; The Maryland Equal Pay Act, Md. Code Ann. Lab. & Empl. § 3-301 *et seq.*;

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the

Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; the Maryland Fair Employment

Practices Act, Md. Code Ann. 20-601 *et seq.*; 28 U.S.C. § 1331; and 28 U.S.C. § 1367.

2.      This Court has personal jurisdiction over Defendant as it resides in, conducts business in,

and employs individuals in this judicial district.

3. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391 and to 42 U.S.C. § 2000e-5(f)(3) because:  the violations giving rise to Plaintiff's claims occurred within this judicial district; Defendant employs Plaintiff within this judicial district; and because Defendant resides within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff exhausted his administrative remedies by filing a charge and supplemental charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 8, 2014 and September 29, 2015, respectively.  On December 16, 2016, the EEOC issued the Notice of Right to Sue letter.  Plaintiff received this letter on or around December 27, 2016.

## THE PARTIES

5. Plaintiff resides at 12715 Glynis Road, Clinton, MD 20735.

6. Defendant is incorporated in the state of Maryland with its principal address listed as 7503 Surratts Road, Clinton, MD 20735.  Upon information and belief, Defendant employs more than 1000 employees.

## STATEMENT OF FACTS

*Plaintiff's Work Performance*

7. Plaintiff is a Black African-American male.

8. In November 2003, Plaintiff was hired by Defendant as a respiratory therapist at MedStar Southern Maryland Hospital Center in Clinton, MD.

9. Plaintiff completed his Bachelor of Science Degree in Cardiopulmonary Science in May 2003 and his Master's Degree in Healthcare Administration in August 2016.  Plaintiff is

currently pursuing a Master's Degree in Business Administration.

10.     Since 2003, Plaintiff has received satisfactory performance reviews.

11.     Since 2007, Plaintiff has not had any disciplinary actions or any performance issues while working for Defendant.

12.     In January 2014, Plaintiff was promoted to the night shift Supervisor of Respiratory Care given his strong work performance and because he possessed the necessary skills, experience, and qualifications of a Supervisory Respiratory Therapist.

*Plaintiff's First EEOC Charge and Reporting Discrimination to Management*

13.     In or around early 2008, Plaintiff filed an EEOC charge against his then-supervisor, Deborah Ford, former Respiratory Care Director at MedStar, alleging that he was being discriminated against based on his race.

14.     Upon information and belief, Deborah Ford knew about Plaintiff's EEOC charge against her as the claim was investigated by the EEOC and, upon information and belief, management officials were contacted during the investigation.

15.     Further, around the time Plaintiff filed his EEOC Charge in 2008, Plaintiff spoke with Ms. Ford's supervisor, Grant McClure, then VP of Professional Services, and Paul Zellar, Director of Human Resources, about the fact that he felt that Ms. Ford was discriminating against his based on his race.

*Failure to Compensate Plaintiff Fairly*

16.     Since filing his first EEO charge in 2008 and speaking to management officials about the fact he felt he was being discriminated against, Plaintiff has only received minimal pay increases compared to his similarly-situated colleagues despite Plaintiff's fourteen years of service, advanced education, and supervisory status.

17.     In or around June 2008, Plaintiff was denied a pay increase, which, upon information and belief, was afforded to all other respiratory therapists.  Plaintiff was the only respiratory therapist that did not receive a raise at this time.

18.     In or around June 2008, Plaintiff asked his then-supervisor, Ms. Ford, about whether he was going to get a pay raise.  Ms. Ford responded that none of the respiratory therapists were getting a pay raise as the hospital was having budgetary issues.  Plaintiff believes this proffered reason was false.

19.     In or around July 2014, Plaintiff discovered that he was paid significantly less than the vast majority of other respiratory therapists that he worked.  Some of the respiratory therapists who were paid more than Plaintiff have less experience, less training, and less education than Plaintiff.  Plaintiff even made less than some of the respiratory therapists that he was supervising at the time.  Plaintiff believes that this pay disparity exists to the present day.

20.     Plaintiff and Gracianie Dariste were hired by MedStar at the same time in 2003 for the same position of respiratory therapist.  Plaintiff and Ms. Dariste were trained at the same time for this position.  Upon information and belief, in 2008, prior to Plaintiff's first EEO charge, his pay rate was approximately $1.00/hour more than Ms. Dariste's pay rate for doing the same work as a respiratory therapist.  In 2014, in addition to carrying out his extra supervisory tasks, Plaintiff worked as respiratory therapist and did the same work as other respiratory therapists.  Ms. Dariste was also a respiratory therapist at this time and worked under Plaintiff's supervision.  The work that Plaintiff did as a respiratory therapist required equal skill, effort, and responsibility as the work Ms. Dariste did as a respiratory therapist in 2014.  Upon information and belief, in 2014, Ms. Dariste was paid

approximately $7.00/hour more than Plaintiff even though he was doing the work of a respiratory therapist in addition to carrying out his supervisory duties.

21. In or around July 2014, Plaintiff complained to his supervisor about his rate of pay.

22. In or around August 2014, Plaintiff met with management officials, including William Deberry, Paul Zellar, and Grant McClure.  As a result of this meeting, Plaintiff's rate of pay was raised from $27.40/hour to $31.50/hour.

23. Plaintiff was advised by William Deberry and Paul Zellar that this raise was to rectify a disparity in his base pay and did not reflect a supervisory pay differential.

24. Plaintiff was informed by Mr. Deberry that he would be meeting with a Hospital Vice President to get Plaintiff's supervisory pay differential instated.

25. To-date, Plaintiff has not had his supervisory pay differential instated.

26. Upon information and belief, female respiratory therapist Supervisors, including Deborah Vegura, made substantially more than Plaintiff for doing essentially the same work that Plaintiff does as respiratory therapist Supervisor.

27. Upon information and belief, to-date, the majority of the other respiratory therapists with less experience and who are not supervisors are paid more than Plaintiff.

28. Upon information and belief, none of the other respiratory therapists have engaged in protected activity.

*Plaintiff's Second EEO Charge*

29. On October 8, 2014, Plaintiff filed his second EEOC charge, alleging discrimination based on race and sex, and retaliation due to filing his first EEOC charge.

30. On September 29, 2015, Plaintiff filed a supplemental charge of discrimination with the EEOC alleging further acts of retaliation.

31.    On information and belief, Marcelous Johnson, Director of Respiratory Care, and Grant McClure, had knowledge of Plaintiff's protected activity because in the summer of 2015, Mr. Johnson told Plaintiff that Mr. McClure did not recommend Plaintiff for a promotion due to his pending EEOC complaints.

32.    Furthermore, the EEOC conducted an investigation of Plaintiff's EEOC complaints, and upon information and belief, contacted Plaintiff's management to inquire about the allegations set forth in his Charges.

*Denial of Promotion*

33.    In the summer of 2015, the position of day shift Supervisor of Respiratory Care became open.  The day shift Supervisor acts as second in command to the Respiratory Care Director.

34.    Plaintiff spoke with his then direct supervisor, Mr. Johnson, about the open position.

35.    Plaintiff was recommended for the position by numerous co-workers and by Mr. Johnson.

36.    Mr. Johnson advised Plaintiff that out of all of the applicants, Plaintiff was the most qualified and the best fit for the position.

37.    Before Mr. Johnson could make the final decision, Mr. Johnson was required to obtain approval from his supervisor, Grant McClure.  Upon information and belief, Mr. McClure did not approve of promoting Plaintiff.

38.    Plaintiff was denied the promotion for which he was qualified.

39.    The position was awarded to Christina Josephson, a Caucasian female.  Ms. Josephson lacked Complainant's supervisory experience and also did not hold a Bachelor's degree, which was a requirement for the position.

40.    Plaintiff inquired with Mr. Johnson as to why he did not receive the promotion.  Mr.

Johnson advised Plaintiff that when he discussed promoting Plaintiff with Mr. McClure, Mr. McClure refused to sign off on Plaintiff's promotion because Mr. McClure viewed Plaintiff as a "trouble maker" in light of his pending EEO complaints.

*Supervisor Meetings*

41.  Plaintiff's normal duty hours are 7:00 p.m. to 7:30 a.m., three days a week.

42.  From approximately April 2015 to June 2016, Plaintiff was required to attend supervisor meetings at 7:30 a.m. every Monday morning either in-person or telephonically.

43.  The meetings lasted, on average, 45 minutes to 2 hours.

44.  Plaintiff missed approximately 3 meetings.

45.  For the majority of the meetings, Plaintiff attended telephonically.

46.  All other supervisors were scheduled to work during the supervisor meetings and were paid for their attendance because they were on duty.

47.  Plaintiff, however, did not get paid for attending these meetings telephonically because he was not on duty.

48.  Defendant unlawfully failed to pay Plaintiff for his work attending the mandatory supervisor meetings telephonically.

49.  Further, Plaintiff was written up for missing one supervisor meeting while he was scheduled to be off.

50.  Specifically, Plaintiff missed the supervisor meeting on November 30, 2015.  Plaintiff was absent at this meeting because he was on scheduled leave and his travel plans were known to his supervisors.  At the time of this supervisor meeting, Plaintiff was in flight traveling back to Maryland from his Thanksgiving holiday.

51.  Upon landing on November 30, 2015, Plaintiff called the hospital to explain his absence

from the supervisor meeting.

52.    Plaintiff spoke with Assistant Director, Christina Josephson.  Ms. Josephson advised Plaintiff that Mr. Johnson had cancelled that week's management meeting because too many therapists, including Ms. Josephson, had attended a Neonatal Resuscitation Program class that morning.

53.    Further, Plaintiff was informed that it was extremely busy during shift change due to Code Blues and Rapid Responses being initiated.

54.    Despite these facts, Plaintiff was issued a Coaching Form for not attending the November 30th meeting, which did not even occur, and when he did in fact call in to explain his absence.

55.    The Coaching Form informed Plaintiff that the meetings were mandatory and that he was expected to communicate with the Director in advance if he was unable to attend. Further, Plaintiff was not scheduled to be working during the November 30th meeting.

56.    Before he missed the management meeting on November 30, 3015, Plaintiff was never informed that the Monday morning supervisor meetings were a mandatory condition of his employment.

57.    Further, other supervisors missed Monday morning supervisor meetings without receiving any coaching from or reprimand from Mr. Johnson.

58.    Upon information and belief, Ms. Bowie missed the supervisor meeting on November 23, 2015 without calling in, but was not disciplined, reprimanded, or coached for doing so.

59.    Upon information and belief, on November 16, 2015, Ms. Josephson missed the supervisor meeting, but was not disciplined, reprimanded, or coached for doing so.

60.    Mr. Johnson himself missed numerous supervisor meetings as well.  In 2016, Mr.

Johnson missed or cancelled management meetings on January 26, 2016; February 1, 2016; February 29, 2016; and March 22, 2016.  Upon information and belief, Mr. Johnson was not disciplined, reprimanded, or coached for doing so.

*Modification of Job Duties*

61.     In July 2015, Plaintiff's direct supervisor, Mr. Johnson, began assigning Plaintiff undesirable work assignments and additional work, and modified his job duties, while other similarly-situated employees were not subject to such treatment.

62.     In August 2015, Mr. Johnson diminished Plaintiff's responsibilities in the department.

63.     For example, Mr. Johnson took away the supervisory duty of Floor Quality Assurance ("QA").  Plaintiff never requested that Mr. Johnson relieve him of this duty and never stated to Mr. Johnson that he was having a difficult time performing this duty.  However, Mr. Johnson decided to split the Floor QA duties between Christina Josephson and Shay Bowie, the two day shift Supervisors.

64.     At the same time that Plaintiff's QA duties were stripped from him, Mr. Johnson added additional duties of a more administrative nature (rather than of a supervisory nature) that Plaintiff was now responsible for.

65.     Two weeks after Plaintiff was stripped of his QA duties, Plaintiff was once again assigned these duties without adjusting the additional administrative and undesirable work that had been assigned to him.

66.     On February 1, 2016, Mr. Johnson took the supervisory duty of scheduling away from Plaintiff and gave this duty to JoEllen Praino, a less qualified, nonsupervisory Caucasian female who worked the day shift.  Plaintiff did not request that Mr. Johnson relieve him of this responsibility.  Plaintiff had been the sole scheduler of the night shift for the past

three years.  Scheduling is a supervisory task and Ms. Praino was not a Supervisor.

67.     On February 11, 2016, Mr. Johnson scheduled a night shift meeting to explain his reason

for reassigning scheduling to Ms. Praino.  The employees in the meeting were not

supportive of this change and expressed their opposition to Ms. Praino as the night shift

scheduler because she was not a supervisor.  The employees requested that Plaintiff

remain as the primary scheduler for the night shift.  Mr. Johnson decided to then reassign

the night shift scheduling duties back to Plaintiff.

68.     Even though Mr. Johnson assigned the scheduling duties back to Plaintiff, Plaintiff kept

the newly added administrative duties.

*Heightened and Inappropriate Monitoring / Scrutiny*

69.     Mr. Johnson has monitored Plaintiff to a degree above and beyond that which he has

monitored other employees and beyond to a degree beyond which is appropriate.

70.     For example, Plaintiff was not scheduled to work on January 25, 2016, the day after a

blizzard hit the DC metro area.

71.     Numerous respiratory therapist staff members called out due to illness, family

emergencies, or being snowed in, which left the night shift understaffed.

72.     At 10:52 a.m. on January 25, 2016, Mr. Johnson sent a text message to Plaintiff

informing him that he needed to cover the night shift from 7:00 p.m. to 7:00 a.m.

73.     Plaintiff in turn informed Mr. Johnson that he would require the hospital's 4x4 service to

pick him up because his neighborhood had not been plowed and the main road was

approximately a 30-minute walk from his house.  Mr. Johnson agreed via text message to

Plaintiff that the 4x4 service would pick him up at 5:30 p.m.

74.     At 3:03 p.m. the 4x4 driver called Plaintiff and stated that he was at the entrance of his

neighborhood, but that he could not make it into Plaintiff's neighborhood because the snow was too high.  The driver asked Plaintiff if he could walk to the main road to meet the 4x4 driver.  Plaintiff explained to the driver that he was not ready because the driver was 2.5 hours early.

75.     Nevertheless, Plaintiff got ready as quickly as he could and began walking to meet the 4x4 driver at the main road around 4 p.m.

76.     As Plaintiff attempted to walk through his neighborhood to the main road, the poor weather conditions made it very unsafe for him.

77.     Plaintiff called Mr. Johnson and explained that it was not safe to meet the 4x4 driver at the main road and that he would not be able to make it to work.

78.     Around 6:00 p.m., Plaintiff received a text message from Mr. Johnson, informing him that he had driven past Plaintiff's neighborhood and confirmed the conditions were terrible as Plaintiff had represented.

79.     Upon information and belief, Mr. Johnson was not driving past other staff members' houses/neighborhoods to confirm that they could not make it into work.

*Other Examples of Disparate Treatment*

80.     In the summer of 2015, Mr. Johnson promoted Ms. Josephson (Caucasian female) to the day shift respiratory therapist Supervisor position even though she did not have a Bachelor's degree, a requirements of the job and even though Plaintiff, who also applied, was more qualified for the position.

81.     In December 2015, Mr. Johnson transferred Lisa Yount (Caucasian female), a full-time Respiratory Therapist, from the night shift to the day shift.

82.     At the time, Ms. Yount has about 5 years of clinical experience as a Respiratory

Therapist.  At the time, Ms. Yount began working at MedStar about a year prior to her transfer.  Further, Ms. Yount did not have bachelor's degree.

83.     Upon information and belief, Ms. Yount received a $3.00/hour raise when she was transferred to the day shift.

84.     Plaintiff—who is a Supervisor, has worked for Defendant for 13 years, and has his bachelor's and master's degrees—is making substantially less than Ms. Yount.

85.     Additionally, on or around January 2015, Mr. Johnson developed a position called the Clinical Educator/Coordinator.  This position was not posted such that anyone who was interested could apply.

86.     Instead, Mr. Johnson selected Lynn Gregg (Caucasian female), a Respiratory Therapist, for the position.

87.     When Ms. Bowie (Bi-racial female) and Plaintiff (African-American male) asked Mr. Johnson about the position and its requirements, they were told that they needed a master's degree in order to be selected as the Clinical Educator/Coordinator.

88.     Despite this representation, Ms. Gregg was selected for the position even though she only has an associate's degree.  Ms. Gregg was handed the position over two interested supervisors who, despite having bachelor's degrees, were told that they did not meet the minimum qualifications for the job.

## COUNT 1
### The Maryland Wage Payment and Collection Law ("MWPCL")
### (Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*)

89.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 88 as if fully set forth herein.

90.     From approximately April 2015 to June 2016, Defendant required Plaintiff to attend

supervisor meetings every Monday morning as part of his job duties.

91.    Plaintiff missed only approximately 3 meetings during this time period.

92.    Plaintiff attended the supervisor meetings either telephonically or in person.

93.    Plaintiff attended the majority of the supervisor meetings telephonically.

94.    Plaintiff's attendance at supervisory meetings was required by Defendant and was a

service performed by Plaintiff at the request of and under the control of Defendant, and

was thus on Defendant employer's time.

95.    Accordingly, Plaintiff is entitled by law to be paid for his required attendance at the

supervisory meetings.

96.    Defendant failed to pay Plaintiff for his time attending the supervisor meetings

telephonically.

97.    Plaintiff lost wages for attending these supervisory meetings telephonically as required

by Defendant without being paid.

98.    Defendant had no legitimate reason for its failure to pay Plaintiff for the time he spent

attending the supervisory meetings telephonically.

99.    Defendant's actions have thereby violated the Maryland Wage Payment and Collection

Law.

100.   As a result of the unlawful failure to pay Plaintiff as alleged in this Complaint, Plaintiff has

sustained damages consisting of lost wages and emotional distress.

### COUNT 2
**The Equal Pay Act of 1963, as amended ("Equal Pay Act")**
(29 U.S.C. § 206(d) *et seq.*) and
**Lilly Ledbetter Fair Pay Act of 2009**

101.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 100 as if

fully set forth herein.

13

102.   Upon information and belief, since around 2008, Defendant has paid Plaintiff less than his fellow female supervisors and/or female respiratory therapists for work requiring the same skill, effort, and responsibility.

103.   Further, Defendant has provided Plaintiff less desirable work than his fellow female counterparts by, *inter alia*, placing him as a supervisor on the night shift and refusing to hire him for more desirable positions for which he was qualified, including, but not limited to:  appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the Day Shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson.

104.   Defendant has no legitimate, nondiscriminatory reason for its unlawful actions.

105.   As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting lost wages and emotional distress.  Plaintiff's damages are ongoing.

## COUNT 3
### The Maryland Equal Pay Act
(Md. Code Ann. Lab. & Empl. § 3-301 *et seq.*)

106.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 105 as if fully set forth herein.

107.   Upon information and belief, since around 2008, Defendant has paid Plaintiff less than his fellow female supervisors and/or female respiratory therapists for work requiring the same skill, effort, and responsibility.

108.   Further, Defendant has provided Plaintiff less desirable work than his fellow female

counterparts by, *inter alia*, placing him as a supervisor on the night shift and refusing to hire him for more desirable positions for which he was qualified, including, but not limited to:  appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the Day Shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson.

109.    Defendant has no legitimate, nondiscriminatory reason for its unlawful actions.

110.    As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting lost wages and emotional distress.  Plaintiff's damages are ongoing.

### COUNT 4
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII")**
(42 U.S.C. § 2000e *et seq.*)

111.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 110 as if fully set forth herein.

112.    Plaintiff engaged in protected activity when he filed his first EEOC charge in early 2008.

113.    Plaintiff engaged in protected activity when he filed his second EEOC charge on October 8, 2014 and when he file his supplemental EEOC charge on September 29, 2015.

114.    By engaging in this protected activity, Plaintiff opposed practices prohibited by 42 U.S.C. § 2000e *et seq.*

115.    Because of Plaintiff's protected activity and opposition to Defendant's actions prohibited by 42 U.S.C. § 2000e *et seq.*, Defendant took numerous retaliatory adverse actions as set forth above.

116. Defendant's retaliatory actions include, *inter alia*:  denying Plaintiff a pay raise that was afforded to all other Respiratory Therapist staff in 2008: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than other Respiratory Therapists that he supervises.

117. Further acts of retaliation by Defendant include, *inter alia*:  stripping Plaintiff of two of his main supervisory duties (Floor QA and scheduling) and assigning him more menial administrative tasks; assigning Plaintiff a disproportionate workload; appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson; issuing Plaintiff a coaching form for not appearing at a management meeting on his time off and when the meeting was not even held and when others were not disciplined for missing meetings; and monitoring/scrutinizing Plaintiff more than other employees.

118. Defendant has no legitimate, nondiscriminatory reason for its retaliatory actions.

119. As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress.  Plaintiff's damages are ongoing.

**COUNT 5**
**Race and Sex Discrimination in Violation of Title VII**
(42 U.S.C. § 2000 *et seq.*)

120. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 120 as if

fully set forth herein.

121.   As a Black African-American and as a male, Plaintiff is a member of classes of individuals protected under Title VII.

122.   By the above acts, Defendant violated Title VII by discriminating against Plaintiff because of his race and/or sex as a Black African American male.

123.   These discriminatory actions based on race and/or sex include, *inter alia*:  denying Plaintiff the day shift Supervisor position even though he was more qualified for the job than Ms. Josephson (Caucasian female); appointing Ms. Gregg (Caucasian female) to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; and, transferring Ms. Yount (Caucasian female) to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified for this position.

124.   Further acts of discrimination based on race and/or sex by Defendant include, *inter alia*: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

125.   Defendant has no legitimate, nondiscriminatory reason for its discriminatory actions.

126.   As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress.  Plaintiff's damages are ongoing.

<u>COUNT 6</u>
**Retaliation in Violation of the Civil Rights Act of 1866**
(42 U.S.C. § 1981 *et seq.*)

127.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 126 as if

fully set forth herein.

128.    As a Black African-American, Plaintiff is a member of a class of individuals protected

under 42 U.S.C. § 1981 *et seq.*

129.    Plaintiff engaged in protected activity when he filed his first EEOC charge in early 2008.

130.    Plaintiff engaged in protected activity when he filed his second EEOC charge on October

8, 2014 and when he file his supplemental EEOC charge on September 29, 2015.

131.    By engaging in this protected activity, Plaintiff opposed practices prohibited by 42 U.S.C.

§ 1981 *et seq.*

132.    Because of Plaintiff's protected activity and opposition to Defendant's actions prohibited

by 42 U.S.C. § 1981 *et seq.*, Defendant took numerous retaliatory adverse actions as set

forth above.

133.    Defendant's retaliatory actions include, *inter alia*: denying Plaintiff a pay raise that was

afforded to all other Respiratory Therapist staff in 2008: denying Plaintiff his supervisory

pay differential; paying Plaintiff less than other Supervisors whose work duties are

substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists,

many of whom have less clinical experience, less tenure, and less education than

Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he

supervises.

134.    Further acts of retaliation by Defendant include, *inter alia*:  stripping Plaintiff of two of

his main supervisory duties (Floor QA and scheduling) and assigning him more menial

administrative tasks; assigning Plaintiff a disproportionate workload; appointing Ms.

Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more

qualified; transferring Ms. Yount to the day shift as a Respiratory Therapist and increased

her pay rate even though Plaintiff was more qualified; denying Plaintiff the day

Supervisor position when he was more qualified for the position than Ms. Josephson;

issuing Plaintiff a coaching form for not appearing at a management meeting on his time

off and when the meeting was not even held and when others were not disciplined for

missing meetings; and monitoring/scrutinizing Plaintiff more than other employees.

135. Defendant has no legitimate, nondiscriminatory reason for its retaliatory actions.

136. As a result of the unlawful retaliation alleged in this Complaint, Plaintiff has sustained

damages consisting of denial of promotions and pay and causing emotional distress.

Plaintiff's damages are ongoing.

**COUNT 7**
**Race Discrimination in Violation of the Civil Rights Act of 1866**
(42 U.S.C. § 1981 *et seq.*)

137. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 136 as if

fully set forth herein.

138. As a Black African-American, Plaintiff is a member of a class of individuals protected

under 42 U.S.C. § 1981 *et seq.*

139. By the above acts, Defendant violated 42 U.S.C. § 1981 *et seq.* by discriminating against

Plaintiff because he is a Black African American.

140. These discriminatory actions based on race include, *inter alia*:  denying Plaintiff the day

shift Supervisor position even though he was more qualified for the job than Ms.

Josephson (Caucasian); appointing Ms. Gregg (Caucasian) to the Clinical

Educator/Coordinator role over Plaintiff even though he was more qualified; and, transferring Ms. Yount (Caucasian) to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified for this position.

141. Further acts of discrimination based on race by Defendant include, *inter alia*: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

142. Defendant has no legitimate, nondiscriminatory reason for its discriminatory actions.

143. As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

<u>**COUNT 8**</u>
**Retaliation in Violation of the Maryland Fair Employment Practices Act ("FEPA")**
(Md. Code Ann. 20-601 *et seq.*)

144. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 143 as if fully set forth herein.

145. Plaintiff engaged in protected activity when he filed his first EEOC charge in early 2008.

146. Plaintiff engaged in protected activity when he filed his second EEOC charge on October 8, 2014 and when he file his supplemental EEOC charge on September 29, 2015.

147. By engaging in this protected activity, Plaintiff opposed practices prohibited by FEPA.

148. Because of Plaintiff's protected activity and opposition to Defendant's actions prohibited by FEPA, Defendant took numerous retaliatory adverse actions as set forth above.

149.   Defendant's retaliatory actions include, *inter alia*: denying Plaintiff a pay raise that was afforded to all other Respiratory Therapist staff in 2008: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

150.   Further acts of retaliation by Defendant include, *inter alia*:  stripping Plaintiff of two of his main supervisory duties (Floor QA and scheduling) and assigning him more menial administrative tasks; assigning Plaintiff a disproportionate workload; appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson; issuing Plaintiff a coaching form for not appearing at a management meeting on his time off and when the meeting was not even held and when others were not disciplined for missing meetings; and monitoring/scrutinizing Plaintiff more than other employees.

151.   Defendant has no legitimate, nondiscriminatory reason for its retaliatory actions.

152.   As a result of the unlawful retaliation alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

## COUNT 9
### Race and Sex Discrimination in Violation of FEPA
(Md. Code Ann. § 20-601 *et seq.*)

153.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 152 as if fully set forth herein.

154.   As a Black African-American and as a male, Plaintiff is a member of classes of individuals protected under FEPA.

155.   By the above acts, Defendant violated FEPA by discriminating against Plaintiff because his race and/or sex as a Black African American male.

156.   These discriminatory actions based on race and/or sex include, *inter alia*:  denying Plaintiff the day shift Supervisor position even though he was more qualified for the job than Ms. Josephson (Caucasian female); appointing Ms. Gregg (Caucasian female) to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; and, transferring Ms. Yount (Caucasian female) to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified for this position.

157.   Further acts of discrimination based on race and/or sex by Defendant include, *inter alia*: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

158.   Defendant has no legitimate, nondiscriminatory reason for its discriminatory actions.

159.   As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional

distress.  Plaintiff's damages are ongoing.

## PRAYER FOR RELIEF

Plaintiff requests that this Court enter a judgment against Defendant on Counts 1 through 9 of the Complaint as follows:

1. for Plaintiff's unpaid wages (including back pay) and benefits at an amount to be determined at trial;

2. for up to three times the amount of the unpaid wages or other amount as allowed for by statute;

3. for an increase in Plaintiff's rate of pay to fairly compensate him;

4. for promotion of Plaintiff to day shift Supervisor of Respiratory Care / Assistant Director of Respiratory Care;

5. for attorneys' fees and costs/expenses of the instant action;

6. for compensatory damages for pain and suffering, mental anguish, and emotional distress on each Count;

7. for punitive damages for an amount to be determined at trial;

8. for prejudgment interest;

9. for post-judgment interest; and

10. and for any other further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.


Respectfully submitted,
Alan Lescht & Associates, P.C.


Date:  March 17, 2017                    By: ___/s/_____
                                         Alan Lescht [12928]

Rani Rolston [17402]
1050 17th St., NW, Suite 400
Washington, D.C. 20036
Tel:  (202) 463-6036
Fax: 202.463.6067
alan.lescht@leschtlaw.com
rani.rolston@leschtlaw.com
*Counsel for Plaintiff*