## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

| | |
|---|---|
| ROBERT JORDAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 8:17-cv-00743-RWT |
| MEDSTAR SOUTHERN MARYLAND | ) |
| HOSPITAL CENTER, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant MedStar Southern Maryland Hospital Center, Inc. ("MSMHC"), by and through its undersigned counsel, hereby responds to Plaintiff Robert Jordan's ("Plaintiff" or "Jordan") Complaint. Any allegation in the Complaint not explicitly admitted below is hereby denied.

### VENUE AND JURISDICTION

1.      This Court has subject matter jurisdiction over this action pursuant to the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 et seq.; the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) et seq.; the Lily Ledbetter Fair Pay Act of 2009; The Maryland Equal Pay Act, Md. Code Ann. Lab. & Empl. § 3-301 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq.; the Maryland Fair Employment Practices Act, Md. Code Ann. 20-601 et seq.; 28 U.S.C. § 1331; and 28 U.S.C. § 1367.

**ANSWER:**      The allegations in Paragraph 1 call for legal conclusions to which no response is required. To the extent a response is required, Defendant admits this Court has jurisdiction over Defendant, but Defendant denies the remaining allegations in Paragraph 1.

1

2.      This Court has personal jurisdiction over Defendant as it resides in, conducts business in, and employs individuals in this judicial district.

**ANSWER:**  The allegations in Paragraph 2 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant admits this Court has jurisdiction over Defendant and that it conducts business in and employs individuals in this judicial district, but Defendant denies the remaining allegations in Paragraph 2.

3.      Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391 and to 42 U.S.C. § 2000e-5(f)(3) because: the violations giving rise to Plaintiff's claims occurred within this judicial district; Defendant employs Plaintiff within this judicial district; and because Defendant resides within this judicial district.

**ANSWER:**    The allegations in Paragraph 3 call for a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that venue is proper in this Court and that it employs Plaintiff within this judicial district, but denies the remaining allegations in Paragraph 3.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      Plaintiff exhausted his administrative remedies by filing a charge and supplemental charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 8, 2014 and September 29, 2015, respectively. On December 16, 2016, the EEOC issued the Notice of Right to Sue letter. Plaintiff received this letter on or around December 27, 2016.

**ANSWER:**  Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination ("Charge") and a supplemental charge of discrimination ("Supplemental Charge") (collectively the "Charges") with the U.S. Equal Employment Opportunity Commission ("EEOC")

and states that the Charges and the dates on the Charges speak for themselves.  To the extent that

the Notice of Right to Sue letter is dated, the document speaks for itself.  Defendant lacks sufficient

knowledge to admit or deny the remaining allegations in Paragraph 4, and therefore, denies the

remaining allegations in Paragraph 4.

## **THE PARTIES**

5.      Plaintiff resides at 12715 Glynis Road, Clinton, MD 20735.

**ANSWER:**      Upon information and belief, Defendant admits the allegations in Paragraph

5.

6.      Defendant is incorporated in the state of Maryland with its principal address listed as

7503 Surratts Road, Clinton, MD 20735. Upon information and belief, Defendant employs more

than 1000 employees.

**ANSWER:**      Defendant admits the allegations in Paragraph 6.

## **STATEMENT OF FACTS**

*Plaintiff's Work Performance*

7.      Plaintiff is a Black African-American male.

**ANSWER:**  Upon information and belief, Defendant admits the allegations in Paragraph 7.

8.      In November 2003, Plaintiff was hired by Defendant as a respiratory therapist at

MedStar Southern Maryland Hospital Center in Clinton, MD.

**ANSWER:**      Upon information and belief, Defendant admits that Plaintiff was hired at

Southern Maryland Hospital Center in Clinton, MD in November 2003 as a respiratory therapist, but

Defendant denies the remaining allegations in Paragraph 8.

9.      Plaintiff completed his Bachelor of Science Degree in Cardiopulmonary Science in

May 2003 and his Master's Degree in Healthcare Administration in August 2016. Plaintiff is

currently pursuing a Master's Degree in Business Administration.

**ANSWER:**   Upon information and belief, Defendant admits that Plaintiff completed his Bachelor of Science Degree in Cardiopulmonary Science in May 2003 and that he completed a Master's of Science Degree in Healthcare Administration in August 2016.  Upon information and belief, Defendant admits that Plaintiff is currently pursuing a Master's Degree in Business Administration and denies any remaining allegations in Paragraph 9.

10.     Since 2003, Plaintiff has received satisfactory performance reviews.

**ANSWER:**   Defendant admits that since it acquired the hospital in 2012, Plaintiff has received performance reviews, but is without sufficient information to admit or deny the remaining allegations in Paragraph 10, and therefore, denies them.

11.     Since 2007, Plaintiff has not had any disciplinary actions or any performance issues while working for Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 11.

12.     In January 2014, Plaintiff was promoted to the night shift Supervisor of Respiratory Care given his strong work performance and because he possessed the necessary skills, experience, and qualifications of a Supervisory Respiratory Therapist.

**ANSWER:** Defendant admits that in 2014, Plaintiff was promoted to Respiratory Therapist Night Shift Supervisor, and that MSMHC deemed him to possess the necessary skills, experience, and qualifications for this position when it promoted him.  Defendant denies the remaining allegations in Paragraph 12.

*Plaintiff's First EEOC Charge and Reporting Discrimination to Management*

13.     In or around early 2008, Plaintiff filed an EEOC charge against his then-supervisor, Deborah Ford, former Respiratory Care Director at MedStar, alleging that he was being

discriminated against based on his race.

**ANSWER:**  Upon information and belief, Defendant admits that Deborah Ford was a former Respiratory Care Director at Southern Maryland Hospital Center.  Defendant did not operate Southern Maryland Hospital Center in 2008, and therefore, lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 13, and therefore denies the remaining allegations in Paragraph 13.

14.     Upon information and belief, Deborah Ford knew about Plaintiff's EEOC charge against her as the claim was investigated by the EEOC and, upon information and belief, management officials were contacted during the investigation.

**ANSWER:**  Defendant did not operate Southern Maryland Hospital Center in 2008 or while Plaintiff's alleged 2008 EEOC Charge was pending, and therefore, lacks sufficient knowledge to admit or deny the allegations in Paragraph 14, and therefore, denies the allegations in Paragraph 14.

15.     Further, around the time Plaintiff filed his EEOC Charge in 2008, Plaintiff spoke with Ms. Ford's supervisor, Grant McClure, then VP of Professional Services, and Paul Zellar, Director of Human Resources, about the fact that he felt that Ms. Ford was discriminating against his based on his race.

**ANSWER:**  Defendant admits that Grant McClure was the Vice President of Professional Services at Southern Maryland Hospital Center in 2008.    Upon information and belief, Defendant also admits that Paul Zeller was the Director of Human Resources at Southern Maryland Hospital in 2008.  Defendant denies that Plaintiff met with Mr. McClure about any alleged discrimination by Ms. Ford.  Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 15, and therefore denies the remaining allegations in Paragraph 15.

*Failure to Compensate Plaintiff Fairly*

16.     Since filing his first EEO charge in 2008 and speaking to management officials about the fact he felt he was being discriminated against, Plaintiff has only received minimal pay increases compared to his similarly-situated colleagues despite Plaintiff's fourteen years of service, advanced education, and supervisory status.

        **ANSWER:**  Defendant denies the allegations in Paragraph 16.

17.     In or around June 2008, Plaintiff was denied a pay increase, which, upon information and belief, was afforded to all other respiratory therapists. Plaintiff was the only respiratory therapist that did not receive a raise at this time.

        **ANSWER:**  Upon information and belief, Defendant denies the allegations in Paragraph 17.

18.     In or around June 2008, Plaintiff asked his then-supervisor, Ms. Ford, about whether he was going to get a pay raise. Ms. Ford responded that none of the respiratory therapists were getting a pay raise as the hospital was having budgetary issues. Plaintiff believes this proffered reason was false.

        **ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 18, and therefore denies them.

19.     In or around July 2014, Plaintiff discovered that he was paid significantly less than the vast majority of other respiratory therapists that he worked. Some of the respiratory therapists who were paid more than Plaintiff have less experience, less training, and less education than Plaintiff. Plaintiff even made less than some of the respiratory therapists that he was supervising at the time. Plaintiff believes that this pay disparity exists to the present day.

        **ANSWER:**  Defendant lacks sufficient knowledge to admit or deny Plaintiff's knowledge or belief, and therefore denies those allegations in Paragraph 19.   Defendant also denies the

remaining allegations in Paragraph 19.

20.     Plaintiff and Gracianie Dariste were hired by MedStar at the same time in 2003 for the same position of respiratory therapist. Plaintiff and Ms. Dariste were trained at the same time for this position. Upon information and belief, in 2008, prior to Plaintiff's first EEO charge, his pay rate was approximately $1.00/hour more than Ms. Dariste's pay rate for doing the same work as a respiratory therapist. In 2014, in addition to carrying out his extra supervisory tasks, Plaintiff worked as respiratory therapist and did the same work as other respiratory therapists. Ms. Dariste was also a respiratory therapist at this time and worked under Plaintiff's supervision. The work that Plaintiff did as a respiratory therapist required equal skill, effort, and responsibility as the work Ms. Dariste did as a respiratory therapist in 2014. Upon information and belief, in 2014, Ms. Dariste was paid approximately $7.00/hour more than Plaintiff even though he was doing the work of a respiratory therapist in addition to carrying out his supervisory duties.

**ANSWER:**  Paragraph 20 contains a number of legal conclusions to which no response is required.  To the extent Paragraph 20 does not constitute legal conclusions, upon information and belief, Defendant admits that Gracianie Dariste was a Registered Respiratory Therapist that began working at Southern Maryland Hospital Center in 2003.  Upon information and belief, Defendant admits that Plaintiff began working at Southern Maryland Hospital Center in 2003.   Defendant admits that in 2014, Plaintiff held a different position than Ms. Dariste, which included, but was not limited to, supervisory duties.  Upon information and belief, Defendant admits that in 2014, Ms. Dariste was paid more per hour than Plaintiff.  Defendant denies the remaining allegations in Paragraph 20.

21.     In or around July 2014, Plaintiff complained to his supervisor about his rate of pay.

**ANSWER:**     Defendant is without sufficient information to admit or deny whether Plaintiff

complained to his supervisor about his rate of pay in July 2014, and therefore, denies the allegations in Paragraph 21.

22.     In or around August 2014, Plaintiff met with management officials, including William Deberry, Paul Zellar, and Grant McClure. As a result of this meeting, Plaintiffs rate of pay was raised from $27.40/hour to $31.50/hour.

**ANSWER:**     Defendant admits that in August 2014, Plaintiff's rate of pay was raised from $27.40 per hour to $31.50 per hour.  Defendant denies that Plaintiff's rate of pay was raised in August 2014 as a result of a meeting with William Deberry, Paul Zeller, and Grant McClure. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 22, and therefore denies the remaining allegations in Paragraph 22.

23.     Plaintiff was advised by William Deberry and Paul Zellar that this raise was to rectify a disparity in his base pay and did not reflect a supervisory pay differential.

**ANSWER:**     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 23, and therefore, denies the allegations in Paragraph 23.

24.     Plaintiff was informed by Mr. Deberry that he would be meeting with a Hospital Vice President to get Plaintiffs supervisory pay differential instated.

**ANSWER:**     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 24, and therefore, denies the allegations in Paragraph 24.

25.     To-date, Plaintiff has not had his supervisory pay differential instated.

**ANSWER:**     Defendant denies the allegations in Paragraph 25.

26.     Upon information and belief, female respiratory therapist Supervisors, including Deborah Vegura, made substantially more than Plaintiff for doing essentially the same work that Plaintiff does as respiratory therapist Supervisor.

**ANSWER:**  Defendant denies the allegations in Paragraph 26.

27.     Upon information and belief, to-date, the majority of the other respiratory therapists with less experience and who are not supervisors are paid more than Plaintiff.

**ANSWER:**  Defendant denies the allegations in Paragraph 27.

28.     Upon information and belief, none of the other respiratory therapists have engaged in protected activity.

**ANSWER:**  The allegations in Paragraph 28 call for a legal conclusion to which no response is required.  To the extent that a response is required, Defendant is without sufficient information to admit or deny the allegations in Paragraph 28, and therefore, denies them.

*Plaintiff's Second EEO Charge*

29.     On October 8, 2014, Plaintiff filed his second EEOC charge, alleging discrimination based on race and sex, and retaliation due to filing his first EEOC charge.

**ANSWER:**     Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination ("Charge") with the EEOC and states that the Charge and the date on the Charge speaks for itself.  Defendant denies the remaining allegations in Paragraph 29.

30.     On September 29, 2015, Plaintiff filed a supplemental charge of discrimination with the EEOC alleging further acts of retaliation.

**ANSWER:**    Upon information and belief, Defendant admits that Plaintiff filed a supplemental charge of discrimination ("Supplemental Charge") with the EEOC and states that the Supplemental Charge and the date on the Supplemental Charge speaks for itself.  Defendant denies the remaining allegations in Paragraph 30.

31.     On information and belief, Marcelous Johnson, Director of Respiratory Care, and Grant McClure, had knowledge of Plaintiff's protected activity because in the summer of 2015, Mr.

Johnson told Plaintiff that Mr. McClure did not recommend Plaintiff for a promotion due to his pending EEOC complaints.

**ANSWER:**  Paragraph 31 contains legal conclusions to which no response is required.  To the extent that Paragraph 31 does not constitute legal conclusions and a response is required, Defendant admits that Marcelous Johnson is the former Director of Pulmonary Services and Respiratory Therapy at MedStar Southern Maryland Hospital Center and Defendant denies the remaining allegations in Paragraph 31.

32.     Furthermore, the EEOC conducted an investigation of Plaintiff's EEOC complaints, and upon information and belief, contacted Plaintiff's management to inquire about the allegations set forth in his Charges.

**ANSWER:**  Upon information and belief, Defendant admits that the EEOC conducted an investigation of Plaintiff's Charges.  Defendant admits that the EEOC contacted Defendant to inquire about the allegations set forth in Plaintiff's Charges, but Defendant denies the remaining allegations in Paragraph 32.

*Denial of Promotion*

33.     In the summer of 2015, the position of day shift Supervisor of Respiratory Care became open. The day shift Supervisor acts as second in command to the Respiratory Care Director.

**ANSWER:**  Defendant admits that in 2015, the position of day shift Supervisor of Respiratory Care was posted.  Defendant denies the remaining allegations in Paragraph 33.

34.     Plaintiff spoke with his then direct supervisor, Mr. Johnson, about the open position.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 34, and therefore, denies them.

35.     Plaintiff was recommended for the position by numerous co-workers and by Mr. Johnson.

**ANSWER:**  Defendant denies the allegations in Paragraph 35.

36.     Mr. Johnson advised Plaintiff that out of all of the applicants, Plaintiff was the most qualified and the best fit for the position.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 36, and therefore, denies the allegations in Paragraph 36.

37.     Before Mr. Johnson could make the final decision, Mr. Johnson was required to obtain approval from his supervisor, Grant McClure. Upon information and belief, Mr. McClure did not approve of promoting Plaintiff.

**ANSWER:**  Defendant denies the allegations in Paragraph 37.

38.     Plaintiff was denied the promotion for which he was qualified.

**ANSWER:**  Defendant denies the allegations in Paragraph 38.

39.     The position was awarded to Christina Josephson, a Caucasian female. Ms. Josephson lacked Complainant's supervisory experience and also did not hold a Bachelor's degree, which was a requirement for the position.

**ANSWER:**  Defendant admits that Christina Josephson, a Caucasian female, was hired as a Supervisor of Respiratory Therapy for the day shift.  Upon information and belief, Defendant admits that Ms. Josephson did not hold a Bachelor's degree at the time she was hired for this position. Defendant denies the remaining allegations in Paragraph 39.

40.     Plaintiff inquired with Mr. Johnson as to why he did not receive the promotion. Mr. Johnson advised Plaintiff that when he discussed promoting Plaintiff with Mr. McClure, Mr. McClure refused to sign off on Plaintiff's promotion because Mr. McClure viewed Plaintiff as a

11

"trouble maker" in light of his pending EEO complaints.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny Plaintiff's conversation with Mr. Johnson, and therefore denies those allegations in Paragraph 40.  Defendant also denies the remaining allegations in Paragraph 40.

*Supervisor Meetings*

41.    Plaintiff's normal duty hours are 7:00 p.m. to 7:30 a.m., three days a week.

**ANSWER:**    Defendant admits that Plaintiff's work schedule is generally 7:00 p.m. to 7:30 a.m., three days a week, but denies the remaining allegations in Paragraph 41.

42.    From approximately April 2015 to June 2016, Plaintiff was required to attend supervisor meetings at 7:30 a.m. every Monday morning either in-person or telephonically.

**ANSWER:**    Defendant admits that Plaintiff was required to attend supervisor meetings, but lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 42, and therefore denies them.

43.    The meetings lasted, on average, 45 minutes to 2 hours.

**ANSWER:**    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 43, and therefore, denies them.

44.    Plaintiff missed approximately 3 meetings.

**ANSWER:**    Defendant admits that Plaintiff missed at least three meetings, but lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 44, and therefore denies them.

45.    For the majority of the meetings, Plaintiff attended telephonically.

**ANSWER:**    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 45, and therefore, denies them.

46.     All other supervisors were scheduled to work during the supervisor meetings and were paid for their attendance because they were on duty.

**ANSWER:**     Upon information and belief, Defendant admits that it paid supervisors, including Plaintiff, for all reported time, including for attending supervisor meetings, and denies the remaining allegations in Paragraph 46.

47.     Plaintiff, however, did not get paid for attending these meetings telephonically because he was not on duty.

**ANSWER:**     Upon information and belief, Defendant denies the allegations in Paragraph 47.

48.     Defendant unlawfully failed to pay Plaintiff for his work attending the mandatory supervisor meetings telephonically.

**ANSWER:**     Defendant denies the allegations in Paragraph 48.

49.     Further, Plaintiff was written up for missing one supervisor meeting while he was scheduled to be off.

**ANSWER:**     Defendant admits that Plaintiff received a Coaching Form for missing a supervisor meeting, but upon information and belief, denies the remaining allegations in Paragraph 49.

50.     Specifically, Plaintiff missed the supervisor meeting on November 30, 2015. Plaintiff was absent at this meeting because he was on scheduled leave and his travel plans were known to his supervisors. At the time of this supervisor meeting, Plaintiff was in flight traveling back to Maryland from his Thanksgiving holiday.

**ANSWER:**     Defendant admits that Plaintiff missed the supervisor meeting on November 30, 2015.  Defendant admits that Plaintiff stated that he was absent from this meeting because of

13

travel for the Thanksgiving holiday and that he was on a flight at the time of the meeting.  Upon

information and belief, Defendant denies the remaining allegations in Paragraph 50.

51.     Upon landing on November 30, 2015, Plaintiff called the hospital to explain his

absence from the supervisor meeting.

**ANSWER:**  Defendant admits that Plaintiff stated that he called the hospital the same day

to explain his absence.  Defendant lacks sufficient knowledge to admit or deny the remaining

allegations in Paragraph 51, and therefore, denies them.

52.     Plaintiff spoke with Assistant Director, Christina Josephson. Ms. Josephson

advised Plaintiff that Mr. Johnson had cancelled that week's management meeting because too

many therapists, including Ms. Josephson, had attended a Neonatal Resuscitation Program class

that morning.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in

Paragraph 52, and therefore, denies them.

53.     Further, Plaintiff was informed that it was extremely busy during shift change

due to Code Blues and Rapid Responses being initiated.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in

Paragraph 53, and therefore, denies them.

54.     Despite these facts, Plaintiff was issued a Coaching Form for not attending the

November 30th meeting, which did not even occur, and when he did in fact call in to explain his

absence.

**ANSWER:**  Defendant admits that Plaintiff was issued a Coaching Form for not attending

the November 30 meeting.  Upon information and belief, Defendant denies the remaining allegations

in Paragraph 54.

55.     The Coaching Form informed Plaintiff that the meetings were mandatory and that he was expected to communicate with the Director in advance if he was unable to attend. Further, Plaintiff was not scheduled to be working during the November 30th meeting.

**ANSWER:**  To the extent that Paragraph 55 refers to the contents of the Coaching Form, the Coaching Form speaks for itself.  Upon information and belief, Defendant denies the remaining allegations in Paragraph 55.

56.     Before he missed the management meeting on November 30, 3015, Plaintiff was never informed that the Monday morning supervisor meetings were a mandatory condition of his employment.

**ANSWER:**  Upon information and belief, Defendant denies the allegations in Paragraph 56.

57.     Further, other supervisors missed Monday morning supervisor meetings without receiving any coaching from or reprimand from Mr. Johnson.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 57, and therefore, denies them.

58.     Upon information and belief, Ms. Bowie missed the supervisor meeting on November 23, 2015 without calling in, but was not disciplined, reprimanded, or coached for doing so.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 58, and therefore, denies them.

59.     Upon information and belief, on November 16, 2015, Ms. Josephson missed the supervisor meeting, but was not disciplined, reprimanded, or coached for doing so.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 59, and therefore, denies them.

60.     Mr. Johnson himself missed numerous supervisor meetings as well. In 2016, Mr.

Johnson missed or cancelled management meetings on January 26, 2016; February 1, 2016; February 29, 2016; and March 22, 2016. Upon information and belief, Mr. Johnson was not disciplined, reprimanded, or coached for doing so.

**ANSWER:**  Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 60, and therefore, denies them.

*Modification of Job Duties*

61.     In July 2015, Plaintiff's direct supervisor, Mr. Johnson, began assigning Plaintiff undesirable work assignments and additional work, and modified his job duties, while other similarly-situated employees were not subject to such treatment.

**ANSWER:**  Defendant admits that in summer 2015, Mr. Johnson communicated his expectations to the Respiratory Therapist Supervisors, including Plaintiff, that they each perform additional duties.  Defendant denies the remaining allegations in Paragraph 61.

62.     In August 2015, Mr. Johnson diminished Plaintiff's responsibilities in the department.

**ANSWER:**  Defendant denies the allegations in Paragraph 62.

63.     For example, Mr. Johnson took away the supervisory duty of Floor Quality Assurance ("QA"). Plaintiff never requested that Mr. Johnson relieve him of this duty and never stated to Mr. Johnson that he was having a difficult time performing this duty. However, Mr. Johnson decided to split the Floor QA duties between Christina Josephson and Shay Bowie, the two day shift Supervisors.

**ANSWER:**  Upon information and belief, Defendant admits that Mr. Johnson adjusted the duties of those under his supervision, but is without sufficient information to admit or deny the remaining allegations in Paragraph 63 and therefore, denies them.

64.     At the same time that Plaintiff's QA duties were stripped from him, Mr. Johnson

added additional duties of a more administrative nature (rather than of a supervisory nature) that Plaintiff was now responsible for.

**ANSWER:**  Upon information and belief, Defendant admits that Mr. Johnson adjusted the duties of those under his supervision, but is without sufficient information to admit or deny the remaining allegations in Paragraph 64 and therefore, denies them.

65.     Two weeks after Plaintiff was stripped of his QA duties, Plaintiff was once again assigned these duties without adjusting the additional administrative and undesirable work that had been assigned to him.

**ANSWER:**  Upon information and belief, Defendant admits that Mr. Johnson adjusted the duties of those under his supervision, but is without sufficient information to admit or deny the remaining allegations in Paragraph 65 and therefore, denies them.

66.     On February 1, 2016, Mr. Johnson took the supervisory duty of scheduling away from Plaintiff and gave this duty to JoEllen Praino, a less qualified, nonsupervisory Caucasian female who worked the day shift. Plaintiff did not request that Mr. Johnson relieve him of this responsibility. Plaintiff had been the sole scheduler of the night shift for the past three years. Scheduling is a supervisory task and Ms. Praino was not a Supervisor.

**ANSWER:**  Defendant admits that JoEllen Praino was a non-supervisory, Caucasian female. Upon information and belief, Defendant admits that Mr. Johnson adjusted the duties of those under his supervision, but is without sufficient information to admit or deny the remaining allegations in Paragraph 66 and therefore, denies them.

67.     On February 11, 2016, Mr. Johnson scheduled a night shift meeting to explain his reason for reassigning scheduling to Ms. Praino. The employees in the meeting were not supportive of this change and expressed their opposition to Ms. Praino as the night shift scheduler because she

17

was not a supervisor. The employees requested that Plaintiff remain as the primary scheduler for the night shift. Mr. Johnson decided to then reassign the night shift scheduling duties back to Plaintiff.

      **ANSWER:**   Upon information and belief, Defendant admits that Mr. Johnson adjusted the duties of those under his supervision, but is without sufficient information to admit or deny the remaining allegations in Paragraph 67 and therefore, denies them.

      68.    Even though Mr. Johnson assigned the scheduling duties back to Plaintiff, Plaintiff kept the newly added administrative duties.

      **ANSWER:**  Upon information and belief, Defendant admits that Mr. Johnson adjusted the duties of those under his supervision, but is without sufficient information to admit or deny the remaining allegations in Paragraph 68 and therefore, denies them.

*Heightened and Inappropriate Monitoring / Scrutiny*

      69.    Mr. Johnson has monitored Plaintiff to a degree above and beyond that which he has monitored other employees and beyond to a degree beyond which is appropriate.

      **ANSWER:**  Defendant denies the allegations in Paragraph 69.

      70.    For example, Plaintiff was not scheduled to work on January 25, 2016, the day after a blizzard hit the DC metro area.

      **ANSWER:**   Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 70, and therefore, denies them.

      71.    Numerous respiratory therapist staff members called out due to illness, family emergencies, or being snowed in, which left the night shift understaffed.

      **ANSWER:**   Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 71, and therefore, denies them.

72.     At 10:52 a.m. on January 25, 2016, Mr. Johnson sent a text message to Plaintiff informing him that he needed to cover the night shift from 7:00 p.m. to 7:00 a.m.

**ANSWER:**    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 72, and therefore, denies them.

73.     Plaintiff in turn informed Mr. Johnson that he would require the hospital's 4x4 service to pick him up because his neighborhood had not been plowed and the main road was approximately a 30-minute walk from his house. Mr. Johnson agreed via text message to Plaintiff that the 4x4 service would pick him up at 5:30 p.m.

**ANSWER:** Defendant admits that it offers associates a 4x4 service in certain circumstances. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 73, and therefore, denies them.

74.     At 3:03 p.m. the 4x4 driver called Plaintiff and stated that he was at the entrance of his neighborhood, but that he could not make it into Plaintiffs neighborhood because the snow was too high. The driver asked Plaintiff if he could walk to the main road to meet the 4x4 driver. Plaintiff explained to the driver that he was not ready because the driver was 2.5 hours early.

**ANSWER:**    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 74, and therefore, denies them.

75.     Nevertheless, Plaintiff got ready as quickly as he could and began walking to meet the 4x4 driver at the main road around 4 p.m.

**ANSWER:**    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 75, and therefore, denies them.

76.     As Plaintiff attempted to walk through his neighborhood to the main road, the poor weather conditions made it very unsafe for him.

**ANSWER:**   Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 76, and therefore, denies them.

77.     Plaintiff called Mr. Johnson and explained that it was not safe to meet the 4x4 driver at the main road and that he would not be able to make it to work.

**ANSWER:**   Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 77, and therefore, denies them.

78.     Around 6:00 p.m., Plaintiff received a text message from Mr. Johnson, informing him that he had driven past Plaintiffs neighborhood and confirmed the conditions were terrible as Plaintiff had represented.

**ANSWER:**   Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 78, and therefore, denies them.

79.     Upon information and belief, Mr. Johnson was not driving past other staff members' houses/neighborhoods to confirm that they could not make it into work.

**ANSWER:**   Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 79, and therefore, denies them.

*Other Examples of Disparate Treatment*

80.     In the summer of 2015, Mr. Johnson promoted Ms. Josephson (Caucasian female) to the day shift respiratory therapist Supervisor position even though she did not have a Bachelor's degree, a requirements of the job and even though Plaintiff, who also applied, was more qualified for the position.

**ANSWER:**   Defendant admits that in the summer of 2015, Christina Josephson, a Caucasian female, was hired as a Supervisor of Respiratory Therapy for the day shift.  Upon information and belief, Defendant admits that Ms. Josephson did not hold a Bachelor's degree at the

time she was hired for this position.  Defendant denies the remaining allegations in Paragraph 80.

81.     In December 2015, Mr. Johnson transferred Lisa Yount (Caucasian female), a full-time Respiratory Therapist, from the night shift to the day shift.

**ANSWER:**  Defendant admits that Lisa Yount is a Caucasian female.  Defendant also admits that Ms. Yount is currently a full-time Respiratory Therapist.  Defendant admits that Ms. Yount was transferred from the night shift to the day shift, but denies the remaining allegations in Paragraph 81.

82.     At the time, Ms. Yount has about 5 years of clinical experience as a Respiratory Therapist. At the time, Ms. Yount began working at MedStar about a year prior to her transfer. Further, Ms. Yount did not have bachelor's degree.

**ANSWER:**   Defendant admits that when she was transferred, Ms. Yount had clinical experience as a Respiratory Therapist and that she had been employed by MSMHC for more than a year.  Upon information and belief, Defendant admits that Ms. Yount does not have a Bachelor's degree.  Defendant denies the remaining allegations in Paragraph 82.

83.     Upon information and belief, Ms. Yount received a $3.00/hour raise when she was transferred to the day shift.

**ANSWER:**   Defendant admits that Ms. Yount's hourly pay rate changed when she was transferred to the day shift, but Defendant denies the remaining allegations in Paragraph 83.

84.     Plaintiff—who is a Supervisor, has worked for Defendant for 13 years, and has his bachelor's and master's degrees—is making substantially less than Ms. Yount.

**ANSWER:**  Defendant admits that Plaintiff is a supervisor.  Upon information and belief, Defendant admits that Plaintiff has a bachelor's and master's degrees.  Defendant denies the remaining allegations in Paragraph 84.

85.     Additionally, on or around January 2015, Mr. Johnson developed a position called the Clinical Educator/Coordinator. This position was not posted such that anyone who was interested could apply.

**ANSWER:**  Defendant denies the allegations in Paragraph 85.

86.     Instead, Mr. Johnson selected Lynn Gregg (Caucasian female), a Respiratory Therapist, for the position.

**ANSWER:**  Defendant admits that Lynn Gregg is a Caucasian female and was a Respiratory Therapist.  Defendant denies the remaining allegations in Paragraph 86.

87.     When Ms. Bowie (Bi-racial female) and Plaintiff (African-American male) asked Mr. Johnson about the position and its requirements, they were told that they needed a master's degree in order to be selected as the Clinical Educator/Coordinator.

**ANSWER:**  Upon information and belief, Defendant admits that Shay Bowie is a multi-racial female.  Upon information and belief, Defendant also admits that Plaintiff is an African-American male.  Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 87, and therefore, denies them.

88.     Despite this representation, Ms. Gregg was selected for the position even though she only has an associate's degree. Ms. Gregg was handed the position over two interested supervisors who, despite having bachelor's degrees, were told that they did not meet the minimum qualifications for the job.

**ANSWER:**   Upon information and belief, Defendant admits that Lynn Gregg has an Associate's degree.  Defendant denies the remaining allegations in Paragraph 88.

<u>COUNT 1</u>
**The Maryland Wage Payment and Collection Law ("MWPCL")**
(Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*)

89.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 88 as if fully set forth herein.

**ANSWER:**     Defendant incorporates the answers to Paragraphs 1 through 88 as though set forth here.

90.     From approximately April 2015 to June 2016, Defendant required Plaintiff to attend supervisor meetings every Monday morning as part of his job duties.

**ANSWER:**     Defendant admits that Plaintiff was required to attend supervisor meetings, but lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 90, and therefore denies them.

91.     Plaintiff missed only approximately 3 meetings during this time period.

**ANSWER:**     Defendant admits that Plaintiff missed at least three meetings, but lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 91, and therefore denies them.

92.     Plaintiff attended the supervisor meetings either telephonically or in person.

**ANSWER:**     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 92, and therefore, denies them.

93.     Plaintiff attended the majority of the supervisor meetings telephonically.

**ANSWER:**     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 93, and therefore, denies them.

94.     Plaintiff's attendance at supervisory meetings was required by Defendant and was a service performed by Plaintiff at the request of and under the control of Defendant, and was thus on

23

Defendant employer's time.

**ANSWER:**   Defendant admits that it required Plaintiff to attend supervisory meetings. The remaining allegations in Paragraph 94 call for legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the remaining allegations in Paragraph 94.

95.   Accordingly, Plaintiff is entitled by law to be paid for his required attendance at the supervisory meetings.

**ANSWER:**  The allegations in Paragraph 95 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 95.

96.   Defendant failed to pay Plaintiff for his time attending the supervisor meetings telephonically.

**ANSWER:**   Defendant denies the allegations in Paragraph 96.

97.   Plaintiff lost wages for attending these supervisory meetings telephonically as required by Defendant without being paid.

**ANSWER:**   Defendant denies the allegations in Paragraph 97.

98.   Defendant had no legitimate reason for its failure to pay Plaintiff for the time he spent attending the supervisory meetings telephonically.

**ANSWER:**  Defendant denies that it failed to pay Plaintiff for the time he spent attending supervisory meetings telephonically, and therefore, denies the allegation sin Paragraph 98.

99.   Defendant's actions have thereby violated the Maryland Wage Payment and Collection Law.

**ANSWER:**   Defendant denies the allegations in Paragraph 99.

100.   As a result of the unlawful failure to pay Plaintiff as alleged in this Complaint,

Plaintiff has sustained damages consisting of lost wages and emotional distress.

**ANSWER:** Defendant denies the allegations in Paragraph 100.

**COUNT 2**
**The Equal Pay Act of 1963, as amended ("Equal Pay Act")**
(29 U.S.C. § 206(d) et seq.) and
**Lilly Ledbetter Fair Pay Act of 2009**

101.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 100 as if fully set forth herein.

**ANSWER:**    Defendant incorporates the answers to Paragraphs 1 through 100 as though set forth here.

102.    Upon information and belief, since around 2008, Defendant has paid Plaintiff less than his fellow female supervisors and/or female respiratory therapists for work requiring the same skill, effort, and responsibility.

**ANSWER:** Defendant denies the allegations in Paragraph 102.

103.    Further, Defendant has provided Plaintiff less desirable work than his fellow female counterparts by, inter alia, placing him as a supervisor on the night shift and refusing to hire him for more desirable positions for which he was qualified, including, but not limited to: appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the Day Shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson.

**ANSWER:** Defendant denies the allegations in Paragraph 103.

104.    Defendant has no legitimate, nondiscriminatory reason for its unlawful actions.

**ANSWER:**    Defendant denies that it has engaged in any unlawful actions, and therefore, denies the allegations in Paragraph 104.

105.    As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting lost wages and emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**    Defendant denies the allegations in Paragraph 105.

## COUNT 3
### The Maryland Equal Pay Act
(Md. Code Ann. Lab. & Empl. § 3-301 et seq.)

106.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 105 as if fully set forth herein.

**ANSWER:**    Defendant incorporates the answers to Paragraphs 1 through 105 as though set forth here.

107.    Upon information and belief, since around 2008, Defendant has paid Plaintiff less than his fellow female supervisors and/or female respiratory therapists for work requiring the same skill, effort, and responsibility.

**ANSWER:** Defendant denies the allegations in Paragraph 107.

108.    Further, Defendant has provided Plaintiff less desirable work than his fellow female counterparts by, inter alia, placing him as a supervisor on the night shift and refusing to hire him for more desirable positions for which he was qualified, including, but not limited to: appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the Day Shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson.

**ANSWER:** Defendant denies the allegations in Paragraph 108.

109.    Defendant has no legitimate, nondiscriminatory reason for its unlawful actions.

**ANSWER:**    Defendant denies that it has engaged in any unlawful actions, and therefore, denies the allegations in Paragraph 109.

110.     As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting lost wages and emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**     Defendant denies the allegations in Paragraph 110.

<u>**COUNT 4**</u>
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII")**
(42 U.S.C. § 2000e et seq.)

111.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:**     Defendant incorporates the answers to Paragraphs 1 through 110 as though set forth here.

112.     Plaintiff engaged in protected activity when he filed his first EEOC charge in early 2008.

**ANSWER:**     The allegations in Paragraph 112 call for a legal conclusion to which no response is required.  To the extent that a response is required, Defendant denies the allegations in Paragraph 112.

113.     Plaintiff engaged in protected activity when he filed his second EEOC charge on October 8, 2014 and when he file his supplemental EEOC charge on September 29, 2015.

**ANSWER:**     The allegations in Paragraph 113 call for a legal conclusion to which no response is required.  To the extent that a response is required, Defendant denies the allegations in Paragraph 113.

114.     By engaging in this protected activity, Plaintiff opposed practices prohibited by 42 U.S.C. § 2000e et seq.

**ANSWER:**     The allegations in Paragraph 114 call for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in

Paragraph 114.

115.     Because of Plaintiff's protected activity and opposition to Defendant's actions prohibited by 42 U.S.C. § 2000e et seq., Defendant took numerous retaliatory adverse actions as set forth above.

**ANSWER:**     Defendant denies the allegations in Paragraph 115.

116.     Defendant's retaliatory actions include, inter alia: denying Plaintiff a pay raise that was afforded to all other Respiratory Therapist staff in 2008: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than other Respiratory Therapists that he supervises.

**ANSWER:**  Defendant denies the allegations in Paragraph 116.

117.     Further acts of retaliation by Defendant include, inter alia: stripping Plaintiff of two of his main supervisory duties (Floor QA and scheduling) and assigning him more menial administrative tasks; assigning Plaintiff a disproportionate workload; appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson; issuing Plaintiff a coaching form for not appearing at a management meeting on his time off and when the meeting was not even held and when others were not disciplined for missing meetings; and monitoring/scrutinizing Plaintiff more than other employees.

**ANSWER:**  Defendant denies the allegations in Paragraph 117.

118.    Defendant has no legitimate, nondiscriminatory reason for its retaliatory actions.

**ANSWER:**    Defendant denies that it has engaged in any retaliatory actions, and therefore, denies the allegations in Paragraph 118.

119.    As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

**ANSWER:** Defendant denies the allegations in Paragraph 119.

**COUNT 5**
**Race and Sex Discrimination in Violation of Title VII**
(42 U.S.C. § 2000 et seq.)

120.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 120 as if fully set forth herein.

**ANSWER:**    Defendant incorporates the answers to Paragraphs 1 through 119 as though set forth here.

121.    As a Black African-American and as a male, Plaintiff is a member of classes of individuals protected under Title VII.

**ANSWER:**    Upon information and belief, Defendant admits that Plaintiff is a Black African-American male.  The remaining allegations in Paragraph 121 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations in Paragraph 121.

122.    By the above acts, Defendant violated Title VII by discriminating against Plaintiff because of his race and/or sex as a Black African American male.

**ANSWER:**    Defendant denies the allegations in Paragraph 122.

123.    These discriminatory actions based on race and/or sex include, inter alia: denying

Plaintiff the day shift Supervisor position even though he was more qualified for the job than Ms. Josephson (Caucasian female); appointing Ms. Gregg (Caucasian female) to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; and, transferring Ms. Yount (Caucasian female) to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified for this position.

**ANSWER:**  Defendant denies the allegations in Paragraph 123.

124.    Further acts of discrimination based on race and/or sex by Defendant include, inter alia: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

**ANSWER:**    Defendant denies the allegations in Paragraph 124.

125.    Defendant has no legitimate, nondiscriminatory reason for its discriminatory actions.

**ANSWER:**    Defendant denies that it has engaged in any discriminatory actions, and therefore, denies the allegations in Paragraph 125.

126.    As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**    Defendant denies the allegations in Paragraph 126.

## COUNT 6
### Retaliation in Violation of the Civil Rights Act of 1866
(42 U.S.C. § 1981 et seq.)

127.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through

126 as if fully set forth herein.

**ANSWER:**    Defendant incorporates the answers to Paragraphs 1 through 126 as though set forth here.

128.    As a Black African-American, Plaintiff is a member of a class of individuals protected under 42 U.S.C. § 1981 *et seq.*

**ANSWER:**    Upon information and belief, Defendant admits that Plaintiff is a Black African-American.   The remaining allegations in Paragraph 128 call for a legal conclusion to which no response is required.   To the extent a response is required, Defendant denies the remaining allegations in Paragraph 128.

129.    Plaintiff engaged in protected activity when he filed his first EEOC charge in early 2008.

**ANSWER:**    The allegations in Paragraph 129 call for a legal conclusion to which no response is required.   To the extent a response is required, Defendant denies the allegations in Paragraph 129.

130.    Plaintiff engaged in protected activity when he filed his second EEOC charge on October 8, 2014 and when he file his supplemental EEOC charge on September 29, 2015.

**ANSWER:**    The allegations in Paragraph 130 call for a legal conclusion to which no response is required.   To the extent a response is required, Defendant denies the allegations in Paragraph 130.

131.    By engaging in this protected activity, Plaintiff opposed practices prohibited by 42 U.S.C. § 1981 et seq.

**ANSWER:**    Defendant denies the allegations in Paragraph 131.

132.    Because of Plaintiff's protected activity and opposition to Defendant's actions

prohibited by 42 U.S.C. § 1981 et seq., Defendant took numerous retaliatory adverse actions as set forth above.

**ANSWER:**     Defendant denies the allegations in Paragraph 132.

133.     Defendant's retaliatory actions include, inter alia: denying Plaintiff a pay raise that was afforded to all other Respiratory Therapist staff in 2008: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

**ANSWER:**  Defendant denies the allegations in Paragraph 133.

134.     Further acts of retaliation by Defendant include, inter alia: stripping Plaintiff of two of his main supervisory duties (Floor QA and scheduling) and assigning him more menial administrative tasks; assigning Plaintiff a disproportionate workload; appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson; issuing Plaintiff a coaching form for not appearing at a management meeting on his time off and when the meeting was not even held and when others were not disciplined for missing meetings; and monitoring/scrutinizing Plaintiff more than other employees.

**ANSWER:**  Defendant denies the allegations in Paragraph 134.

135.     Defendant has no legitimate, nondiscriminatory reason for its retaliatory actions.

**ANSWER:**     Defendant denies that it has engaged in any retaliatory actions, and

therefore, denies the allegations in Paragraph 135.

136.    As a result of the unlawful retaliation alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**  Defendant denies the allegations in Paragraph 136.

**COUNT 7**
**Race Discrimination in Violation of the Civil Rights Act of 1866**
(42 U.S.C. § 1981 et seq.)

137.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 136 as if fully set forth herein.

**ANSWER:**    Defendant incorporates the answers to Paragraphs 1 through 136 as though set forth here.

138.    As a Black African-American, Plaintiff is a member of a class of individuals protected under 42 U.S.C. § 1981 et seq.

**ANSWER:**    Upon information and belief, Defendant admits that Plaintiff is a Black African-American.  The remaining allegations in Paragraph 138 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations in Paragraph 138.

139.    By the above acts, Defendant violated 42 U.S.C. § 1981 et seq. by discriminating against Plaintiff because he is a Black African American.

**ANSWER:**    Defendant denies the allegations in Paragraph 139.

140.    These discriminatory actions based on race include, inter alia: denying Plaintiff the day shift Supervisor position even though he was more qualified for the job than Ms. Josephson (Caucasian); appointing Ms. Gregg (Caucasian) to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; and, transferring Ms. Yount (Caucasian) to the day

shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified for this position.

**ANSWER:**  Defendant denies the allegations in Paragraph 140.

141.    Further acts of discrimination based on race by Defendant include, inter alia: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

**ANSWER:**    Defendant denies the allegations in Paragraph 141.

142.    Defendant has no legitimate, nondiscriminatory reason for its discriminatory actions.

**ANSWER:**    Defendant denies that it has engaged in any discriminatory actions, and therefore, denies the allegations in Paragraph 142.

143.    As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**    Defendant denies the allegations in Paragraph 143.

## COUNT 8
### Retaliation in Violation of the Maryland Fair Employment Practices Act ("FEPA")
(Md. Code Ann. 20-601 *et seq.*)

144.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 143 as if fully set forth herein.

**ANSWER:**    Defendant incorporates the answers to Paragraphs 1 through 144 as though set forth here.

145.     Plaintiff engaged in protected activity when he filed his first EEOC charge in early 2008.

**ANSWER:**     The allegations in Paragraph 145 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 145.

146.     Plaintiff engaged in protected activity when he filed his second EEOC charge on October 8, 2014 and when he file his supplemental EEOC charge on September 29, 2015.

**ANSWER:**     The allegations in Paragraph 146 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 146.

147.     By engaging in this protected activity, Plaintiff opposed practices prohibited by FEPA.

**ANSWER:**  Defendant denies the allegations in Paragraph 147.

148.     Because of Plaintiff's protected activity and opposition to Defendant's actions prohibited by FEPA, Defendant took numerous retaliatory adverse actions as set forth above.

**ANSWER:**     Defendant denies the allegations in Paragraph 148.

149.     Defendant's retaliatory actions include, inter alia: denying Plaintiff a pay raise that was afforded to all other Respiratory Therapist staff in 2008: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

**ANSWER:**     Defendant denies the allegations in Paragraph 149.

150.     Further acts of retaliation by Defendant include, inter alia: stripping Plaintiff of two of his main supervisory duties (Floor QA and scheduling) and assigning him more menial administrative tasks; assigning Plaintiff a disproportionate workload; appointing Ms. Gregg to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; transferring Ms. Yount to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified; denying Plaintiff the day Supervisor position when he was more qualified for the position than Ms. Josephson; issuing Plaintiff a coaching form for not appearing at a management meeting on his time off and when the meeting was not even held and when others were not disciplined for missing meetings; and monitoring/scrutinizing Plaintiff more than other employees.

**ANSWER:**  Defendant denies the allegations in Paragraph 150.

151.     Defendant has no legitimate, nondiscriminatory reason for its retaliatory actions.

**ANSWER:**     Defendant denies that it has engaged in any retaliatory actions, and therefore, denies the allegations in Paragraph 151.

152.     As a result of the unlawful retaliation alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**     Defendant denies the allegations in Paragraph 152.

## COUNT 9
### Race and Sex Discrimination in Violation of FEPA
(Md. Code Ann. § 20-601 *et seq.*)

153.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 152 as if fully set forth herein.

**ANSWER:**     Defendant incorporates the answers to Paragraphs 1 through 152 as though set forth here.

154.     As a Black African-American and as a male, Plaintiff is a member of classes of individuals protected under FEPA.

**ANSWER:**   Upon information and belief, Defendant admits that Plaintiff is a Black African-American male.  The remaining allegations in Paragraph 154 call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations in Paragraph 154.

155.     By the above acts, Defendant violated FEPA by discriminating against Plaintiff because his race and/or sex as a Black African American male.

**ANSWER:**   Defendant denies the allegations in Paragraph 155.

156.     These discriminatory actions based on race and/or sex include, inter alia: denying Plaintiff the day shift Supervisor position even though he was more qualified for the job than Ms. Josephson (Caucasian female); appointing Ms. Gregg (Caucasian female) to the Clinical Educator/Coordinator role over Plaintiff even though he was more qualified; and, transferring Ms. Yount (Caucasian female) to the day shift as a Respiratory Therapist and increased her pay rate even though Plaintiff was more qualified for this position.

**ANSWER:**   Defendant denies the allegations in Paragraph 156.

157.     Further acts of discrimination based on race and/or sex by Defendant include, inter alia: denying Plaintiff his supervisory pay differential; paying Plaintiff less than other Supervisors whose work duties are substantially similar to Plaintiff's; paying Plaintiff less than other Respiratory Therapists, many of whom have less clinical experience, less tenure, and less education than Plaintiff; and paying Plaintiff less than some of the Respiratory Therapists that he supervises.

**ANSWER:**  Defendant denies the allegations in Paragraph 157.

158.    Defendant has no legitimate, nondiscriminatory reason for its discriminatory actions.

**ANSWER:**    Defendant denies that it has engaged in any discriminatory actions, and therefore, denies the allegations in Paragraph 158.

159.    As a result of the unlawful discrimination alleged in this Complaint, Plaintiff has sustained damages consisting of denial of promotions and pay and causing emotional distress. Plaintiff's damages are ongoing.

**ANSWER:**    Defendant denies the allegations in Paragraph 159.

## PRAYER FOR RELIEF

Defendant denies Plaintiff is entitled to the relief sought in the Complaint or any relief or damages by virtue of the allegations in the Complaint.  Defendant respectfully requests Plaintiff's claims be dismissed with prejudice and that Plaintiff take nothing by reason of said Complaint.

## DEMAND FOR JURY TRIAL

Defendant admits that Plaintiff purports to demand a trial by jury.

## DEFENDANT'S DEFENSES

Defendant asserts the following affirmative and other defenses, without prejudice to its right to argue that Plaintiff bears the burden of proof regarding some or all of these defenses.

## FIRST DEFENSE

This Complaint, in whole or in part, fails to state a cause of action upon which relief can be granted as a matter of fact and/or law.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations, election and exhaustion of remedies, waiver and/or jurisdictional prerequisites to suit to the extent

that Plaintiff alleges, claims, or relies upon conduct either not identified in his charges of discrimination or which occurred outside the bounds of the applicable statute of limitations.

## THIRD DEFENSE

At all times relevant hereto, Defendant has acted in good faith and has not violated any rights which may be secured to Plaintiff under any federal, state, or local laws, rule, regulations or guidelines with respect to its decisions regarding Plaintiff's employment.

## FOURTH DEFENSE

Plaintiff's claims are barred and/or recovery of damages is precluded due to Plaintiff's own misconduct that may be revealed during the discovery process (after-acquired evidence doctrine).

## FIFTH DEFENSE

Plaintiff's claims for damages are barred or reduced by his failure to mitigate his alleged damages, by his failure to suffer actual damages and/or by his inability to prove actual damages.

## SIXTH DEFENSE

Any and all actions taken by Defendant with respect to Plaintiff's employment or the terms and conditions thereof were based upon legitimate business reasons and were taken without regard to Plaintiff's rights, entitlements, actions or inactions under federal, state, local or other law.

## SEVENTH DEFENSE

Plaintiff's claims are barred and/or any recovery of damages is precluded because Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities, to give Defendant adequate notice of alleged discriminatory treatment he now claims to have experienced and/or to avoid harm otherwise.

## EIGHTH DEFENSE

Defendant denies that Plaintiff is entitled to any relief whatsoever, including, to the extent

any of the relief sought by Plaintiff is not recoverable pursuant to federal, state, local, or other law, including, but not limited by the applicable workers' compensation law, which provides an exclusive remedy for Plaintiff for his alleged physical damages, and the statutory caps on compensatory and punitive damages, which potentially limit the compensatory and punitive damages Plaintiff can recover and, specifically, may limit Plaintiff's recovery of the relief he requests in the Complaint.

NINTH DEFENSE

Even if Plaintiff has been damaged as alleged in the Complaint (which he has not), his damages have been caused by his own intentional and/or negligent acts or omissions, for which Defendant is not responsible.

TENTH DEFENSE

Plaintiff has not set forth sufficient facts nor can he establish sufficient facts at trial to legally support an award of punitive damages for all or a portion of Plaintiff's claims and Defendant did not engage in any conduct which would rise to the level required to sustain an award of punitive damages.

ELEVENTH DEFENSE

Defendant would have taken the same actions and made the same decisions irrespective of any alleged unlawful intent, therefore, Plaintiff's claims fail as a matter of fact and law, even if Plaintiff was able to prove (and he cannot) that Defendant's actions and decisions were motivated, in whole or in part, by unlawful discriminatory, retaliatory, or unlawful intent.

TWELFTH DEFENSE

Plaintiff's claims are barred to the extent discovery establishes, in whole or in part, that they are barred by assumption of risk, comparative and/or contributive negligence, intervening

cause, proximate cause, and/or express, apparent or implied consent.

THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, and any recovery of damages is precluded, because he cannot establish a *prima facie* case of discrimination or retaliation in violation of any federal, state, or local law or regulation.

FOURTEENTH DEFENSE

Any female employees alleged by Plaintiff to be comparators and who were compensated at a higher rate than Plaintiff were not performing jobs of substantially equal skill, effort, and/or responsibility to Plaintiff under similar working conditions.

FIFTEENTH DEFENSE

Any wage differences between Plaintiff and any alleged female comparators were based on one or more of the following statutory defenses: (1) a seniority system; (2) a merit system; and (3) factor(s) other than sex.

SIXTEENTH DEFENSE

Plaintiff is not entitled to punitive or compensatory damages under the Equal Pay Act or Maryland Equal Pay Act because they do not afford such damages.

SEVENTEENTH DEFENSE

Plaintiff has been paid all wages to which the law entitles him.

EIGHTEENTH DEFENSE

To the extent Plaintiff contends that he worked any hours not reflected in Defendant's records, that activity was not suffered or permitted and thus does not constitute compensable work.

NINETEENTH DEFENSE

Plaintiff's claims are barred to the extent that Defendant's actions have been taken in good

41

faith in conformity with and reliance upon guidance and established rulings, administrative regulations, and interpretations of federal and state law.

## TWENTIETH DEFENSE

Plaintiff cannot establish that any acts or omissions of Defendant were willful, intentional, malicious or reckless conduct or disregard for the rights of Plaintiff in violation of any federal or state law.

## TWENTY-FIRST DEFENSE

To the extent that Plaintiff's claimed damages were caused, in whole or in part, by his failure to follow Defendant's policies, such failure precludes a finding of willfulness by Defendant.

## TWENTY-SECOND DEFENSE

Plaintiff is not entitled to an award of liquidated damages because Defendant did not willfully violate the Maryland Wage Payment and Collection Law or any other statute and because Defendant acted reasonably and in good faith at all times.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are barred, or recovery of damages is precluded, under the *de minimis* doctrine.

## TWENTY-FOURTH DEFENSE

Defendant has no knowledge of any alleged uncompensated work by Plaintiff.

## TWENTY-FIFTH DEFENSE

Defendant is entitled to a set-off against liability to the extent that Plaintiff has received some, but not all, of the wages to which the law may entitle him.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred because Plaintiff failed to notify Defendant of the alleged statutory violations at the time such violations allegedly occurred, which prevented Defendant from taking any action to remedy such alleged violations.

## TWENTY-SEVENTH DEFENSE

A "bona fide dispute" exists as to the wages, if any, owed to Plaintiff.

## TWENTY-EIGHTH DEFENSE

Defendant reserves the right to assert any additional defenses as they become known to it through discovery or otherwise.

WHEREFORE, Defendant prays for judgment against Plaintiff on his Complaint as follows:

1.     For an Order dismissing Plaintiff's Complaint with prejudice and entering judgment in favor of Defendant and against Plaintiff;

2.     For all costs, disbursements and reasonable attorney's fees incurred by Defendant in connection with the defense of this matter; and

3.     For all other relief as the Court in the exercise of its discretion deems just and proper.

Respectfully submitted,

**JACKSON LEWIS P.C.**

Dated: July 19, 2017            By: /s/ Matthew F. Nieman
                                                Matthew F. Nieman (MD Bar No. 17558)
                                                10701 Parkridge Boulevard
                                                Suite 300
                                                Reston, VA  20191
                                                (703) 483-8300 (Telephone)
                                                (703) 483-8301 (Fax)
                                                Email: niemanm@jacksonlewis.com

                                                *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2017, a true and accurate copy of the foregoing *Defendant's Answer and Defenses to Plaintiff's Complaint* was served and filed electronically with the Clerk of the Court using the CM/ECF, upon:

> Alan Lescht
> Rani Rolston
> Alan Lescht & Associates, P.C.
> 1050 17th Street, NW, Suite 400
> Washington, DC  20036
> (202) 463-6036 (Telephone)
> (202) 463-6067 (Fax)
> alan.lescht@leschtlaw.com
> rani.rolson@leschtlaw.com
>
> *Counsel for Plaintiff*

By: /s/ Matthew F. Nieman
Matthew F. Nieman (MD Bar No. 17558)
10701 Parkridge Blvd., Suite 300
Reston, VA  20191
(703) 483-8300 (Telephone)
(703) 483-8301 (Fax)
niemanm@jacksonlewis.com

*Counsel for Defendant*